IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

THOMAS GEESLING, individually and )
as Administrator of the ESTATE OF )
SHARON GEESLING, )
)
    Plaintiff, ) NO. 2:06-0056
v. ) JUDGE HAYNES
)
CLAY COUNTY, TENNESSEE, JERRY )
RHOTEN, individually and in his )
official capacity as Sheriff of Clay County, )
Tennessee; and GREG ETHERIDGE, )
individually and in his official capacity as )
Deputy Sheriff of Clay County, Tennessee, )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Thomas Geesling, individually and as administrator for the Estate of Sharon Geesling, filed this action under 42 U.S.C. § 1983, against the Defendants: Clay County, Tennessee; Jerry Rhoten, individually and in his official capacity as Sheriff of Clay County, Tennessee; and Greg Ethridge, individually and in his official capacity as Deputy Sheriff of Clay County, Tennessee. Plaintiff's claim arise out of the death of Sharon Geesling after she was transported to the hospital at Ethridge's request Plaintiff alleges that the Defendants were deliberately indifferent to Sharon Geesling's condition. Plaintiff also asserts pendent state law claims under the Tennessee Constitution. A case management order was entered and the parties proceeded with discovery.

Before the Court is the Defendants motion for summary judgment (Docket Entry No. 11), and Plaintiff's response thereto (Docket Entry Nos.12 through 17) to which the defendants filed a reply. (Docket Entry No. 46). Plaintiff concedes that his claims against the Defendant Clay

County and Gerry Rhoten should be dismissed and that his state constitutional claim should be dismissed. See Docket Entry No.16.

For the reasons set forth below, the Court concludes that Plaintiff's federal claims should be dismissed because the undisputed facts establish that his wife's initial placement at a medical facility was due to a clear medical emergency and that his wife's subsequent fatal fall occurred when she was in the care of hospital officials.

## A. Findings of Fact[1]

On June 17, 2005, Deputy Chuck Castle responded to a call for reckless and erratic driving by Roxanne Cline, who lived with the Plaintiff and his wife. (Docket Entry No. 41 Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 1). Castle went to the Plaintiff's house, where Cline had just pulled into the driveway, and spoke with Ms. Cline. Id. at ¶ 2. In Castle's opinion, Cline appeared intoxicated or over-medicated. (Docket entry No. 11-10, Castle Affidavit at ¶ 4). Castle asked to see Ms. Cline's prescription medication bottles. Id. at ¶¶ 4-5. Castle followed Cline into the residence she shared with Geesling, where he found Cline in the back bedroom trying to hide hypodermic needles and pills behind the washer and dryer. Id. at ¶ 5. Castle immediately handcuffed Cline and searched the immediate area. (Docket Entry No. 42, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 6).

In his search of the residence, Castle found prescription medications and drug paraphernalia. Id at ¶ 7. Castle found the Plaintiff's wife, Sharon Geesling, in what appeared to

---

[1]Contrary to Local Rule 56.01(c), Plaintiff's counsel did not respond to the Defendants' Statement of Undisputed Facts (Docket Entry No. 41) with citation to the factual record for any response denying a specific factual averment. The Court deems the Defendants' Statement of Undisputed Facts to be undisputed. Plaintiff did file a series of deposition excerpts that the Court reviewed.

2

him to be a neglected condition in a hospital bed in the living room . (Docket Entry No. 11-10, Castle Affidavit at ¶¶ 7, 9 and 10. Geesling suffered a brain aneurysm and stroke in 1996. (Docket Entry No. 42, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 9) . Geesling spent the next two years in the hospital and then a nursing home before returning home where her husband was her primary caregiver. Id. at ¶ 10. Castle found a completely empty prescription bottle of Alprazolam (Xanax) for Sharon Geesling. Id. at ¶ 11. According to the date the prescription was filled and the recommended dosage, eighty-eight (88) capsules were missing from the bottle. Id.

Castle then called Ethridge, his supervisor who was not at the Geesling residence. Id. at ¶ 12. Concerned about whether Ms. Geesling was receiving her proper medication amounts, Deputy Ethridge instructed Deputy Castle to call an ambulance to have Ms. Geesling transported to the hospital for evaluation for her own safety. (Docket Entry No. 11-10, Castle Affidavit at ¶ 10). Neither Castle nor Ethridge knew whether Geesling was under or over-medicated. (Docket Entry No. 43, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 14). With all the narcotics, drug paraphernalia and missing prescription medication, Castle and Ethridge believed that they had a duty to protect Geesling's welfare. (Docket Entry No. 11-10 Castle Affidavit at ¶ 11).

Clay County EMS was called to transport Geesling to Cumberland Regional Hospital. (Docket Entry No. 43, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 16). Geesling was then transported to Livingston Regional Hospital ("LRH") where Dr. Lee Copeland, Geesling's treating physician, had staff privileges in accordance with local practice. Id. at ¶ 17. Upon arrival at LRH, Geesling was dehydrated id. at ¶ 18, and Dr. McLerran

3

"reinstituted" Geesling's home medications . (Docket Entry No. 11-8, McLerran Deposition at p. 46).

Adult Protective Services ("APS"), a governmental agency conducted the investigation into possible neglect of Geesling while she was a patient at LRH. (Docket Entry No. 44 Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 19). Geesling remained a patient at LRH from June 17, 2005 through June 23, 2005. Id. at ¶ 20. Geesling was unable to communicate effectively due to "cognitive language defects" id. at ¶ 21 and Drs McLerran and Copeland as well as a speech therapist all deemed Geesling incompetent. (Docket Entry No. 36, McLerran Deposition at p. 30).

On June 22, 2005, David Hawthorne from APS evaluated Geesling and felt she was "safe to go home." (Docket Entry No. 44, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 22). Dr. McLerran disagreed with Hawthorne, but with reservations, followed APS instructions and discharged Geesling from LRH on June 23, 2005. Id. at ¶ 22. Yet, before discharge, Hawthorne required home health arrangements and a lockbox for Geesling's medications. (Docket Entry No. 30, Hawthorne deposition at p. 45).

On June 23, 2005, Dr. McLerran learned that criminal charges were filed against the Plaintiff by the Clay County Sheriff's Department and that Geesling would not be discharged without a family member, such as a child or a legal guardian. (Docket Entry No. 11-10, McLerran Dep., pp. 19-20; Docket Entry No. 11-11, Ethridge Affidavit at ¶¶ 9, 10). With APS's instruction, Dr. McLerran cancelled Geesling's discharge and transferred Geesling to a "swing bed" a skilled facility for extended care. (Docket Entry No. 11-8, Dr. McLerran Deposition at p. 20; and Docket Entry No. 25-1, Hawthorne Deposition at p. 23).

4

On June 23, 2005, Dr. Copeland, Geesling's treating physician, completed a physician's statement form for need for Court Ordered protective services (1125 form), opining that Geesling "lacked the capacity to consent to protective services" and was in "imminent danger" if she did not receive immediate nursing home placement. (Docket Entry No. 45, Plaintiff's Responses to the Defendants' Statement of Undisputed Facts at ¶ 26). Later that day, while still at LRH, Ms. Geesling fell out of her wheelchair and suffered a fatal head injury. Id. at ¶ 27.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material.</u>

5

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's

burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted)

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed</u>

<u>verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted)

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to

8

"designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

9

6.  As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

10

For the purposes of this motion and considering the evidence in a light most favorable to Plaintiff as required on this type of motion, the undisputed facts are that as to his initial reaction to Geesling, Ethridge responded to Castle's report that Sharon Geesling was in danger at her house. Ethridge arranged for Geesling to be transported to the County hospital. After her arrival, Sharon Geesling's treating physician diagnosed her as incompetent, and unable to take care of herself. Geesling had previously been a patient at Livingston Regional Hospital. While at the hospital, Sharon Geesling fell from a chair and later died.

Plaintiff's contention is that Sharon Geesling was under the "custody and control" of the Clay County Sheriff's Department during the time that she was a patient at Livingston Regional Hospital and that a special relationship existed between Greg Ethridge and Sharon Geesling giving rise to a constitutional duty . Ethridge allegedly breached that duty taken when he caused Sharon Geesling to be transferred to the hospital that Plaintiff contends put her in a more vulnerable exposure to danger. Plaintiff also contends that causing Sharon Geesling to be transported to the hospital constituted deliberate indifference to her fate, and deprived her of liberty and her life. By this transfer the Defendants allegedly "set the stage" for her subsequent fall from her wheelchair.

To be sure, Ethridge informed hospital and APS representatives that if the Plaintiff attempted to secure Geesling's release that he would seek to arrest Geesling. Yet, the proof reflects that once at LRH, Geesling's doctors and care givers would not have released Geesling. As to Hawthorne's statements about APS's release, Hawthorne

insisted upon satisfactory home health arrangements and a locked medication box. There is not any proof that Plaintiff made both of these arrangements. There is also the lack of any evidence that the arrest of Plaintiff was without probable cause.

Moreover as to the decision to send Geesling to a medical facility, Ethridge was acting upon a report that a bedridden elderly person was in poor condition and was unattended with her medication missing. Geesling's doctors confirmed that Geesling was mentally incompetent and dehydrated. In sum, as to Geesling, Ethridge was responding to a medical emergency. The Sixth Circuit recently held that public officials who respond to assist a person in danger by providing medical care and are "not acting to enforce the law, deter or incarcerate" cannot be held liable in a § 1983 action for damages. Peete v. Metropolitan Government of Nashville and Davidson County, 486 F.3d 217, 222 (6th Cir. 2007). Moreover, at the time of Geesling's fatal fall, she was not under Ethridge's custody or care. Without the officers' liability, the County cannot be held liable under § 1983. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

As to Plaintiff's separate state constitutional claims and his negligence claim for Sharon Geesling's fall at the Livingston Regional Hospital, this Court declines to exercise its pendent jurisdiction over these claims and particularly, claims under the Tennessee Governmental Tort Liability Act. The Clay County Circuit Court has exclusive jurisdiction over these claims pursuant to Tenn. Code Ann. § 29-20-307.

For these reasons, the Defendants' motion for summary judgment should be granted on Plaintiff's federal claims. With the dismissal of Plaintiff's federal claims, Plaintiff's pendent state law claims must be dismissed without prejudice for lack of

12

subject matter jurisdiction. <u>Wal-Juice Bar, Inc. v. Elloit</u>, 899 F.2d 1502, 1504 (6th Cir. 1990).

An appropriate Order is filed herewith.

**ENTERED** this the ⟨30⟩th day of August, 2007.

William J. Haynes, Jr.
United States District Judge